## PLES MANN v. STATE.

No. A-5457.    Opinion Filed March 31, 1926.
(244 Pac. 592.)

G. W. Goad and John R. Leach, for plaintiff in error.

George F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment of conviction in the district court of Delaware county, rendered October 17, 1924, in pursuance of a verdict finding appellant guilty of manslaughter in the first degree, and assessing his penalty at imprisonment in the penitentiary for a term of 25 years.

The information charges that in said county, on or about the 27th day of June, 1924, "he, the said Ples Mann, then and there being, did then and there, unlawfully, feloniously, without authority of law, and with a premeditated design in him to effect the death of one Switch Foreman, shoot and discharge leaden bullets into the body of him, the said Switch Foreman, from a certain revolving pistol, which he, the said Ples Mann, then and there held in his hand, then and there, and thereby, inflicting upon the body of him, the said Switch Foreman, mortal wounds of which he, the said Switch Foreman, did languish, and languishing, did die on the 27th day of June, 1924; that the said Ples Mann did then and there, in the manner aforesaid, him the said Switch Foreman, kill and murder, contrary," etc.

The errors assigned are that the court erred in overruling the demurrer to the information; that the verdict is contrary to law, and is not supported by the evidence; that the court erred in admitting incompetent evidence, and in refusing to admit testimony offered by the defendant, and erred in refusing to give certain requested instructions.

Obviously, the information is sufficient, and the demurrer thereto was properly overruled.

The record is voluminous. The transcript of the testimony covers more than 300 pages. However, there

is not much conflict in the evidence. We deem it sufficient in order to understand the questions presented to state the undisputed facts and the conflicting testimony. At the time of his death Switch Foreman was a resident of the little town of Oaks. He had lived in that community for a third of a century; an elderly man apparently, as it appears that he had five married daughters. Defendant, Ples Mann, lived in that community, and was a deputy sheriff. With J. J. Welch he had been cutting oats near town until about 4 o'clock in the afternoon. Then defendant drove the binder, and Welch drove the engine into town, stopping near Mr. Welch's store. Defendant went into Welch's; had a drink of soda water; then went into Les Carroll's store, which is on the north side of the street. Les Carroll is defendant's brother-in-law. Deceased was lying on a bench in Carroll's store. Defendant told him to get up. Deceased jumped up, and defendant said, "Consider yourself under arrest," and said, "If I had any way to take you to Jay, I would take you." Deceased said, "You would play hell taking me anywhere." Defendant took him by the arm and shoved him outside, and searched him; then led him across the street to Lamont's store. Stopping at the porch, he asked Mr. Lamont if he could take Foreman over to Jay. Mr. Lamont said he could not on account of sickness. Deceased spoke up and said, "You don't have to take me, I can go myself." Defendant said, "You will have to go there next week." Deceased said, "All right." Defendant took him by the arm. They started west. After proceeding 10 or 15 steps, a controversy arose, and defendant drew his gun and shot Foreman twice. One bullet entered the right shoulder. The other bullet entered the center of the body, about an inch below the breast bone. Deceased sank down on his knees, and defendant pushed him over on his back. He was dead before the bystanders reached him.

J. J. Welch testified that he saw defendant leading Switch Foreman across the street from Carroll's to Lamont's store. Defendant spoke to Lamont at the door, and then took Foreman by the arm, and they walked west towards Foreman's home. After going a few steps, they stopped, and defendant hit Foreman on the left side of the neck with his fist; then jumped back; pulled his gun; and shot him twice. Foreman had his hands up in front of his face. When the shots were fired, he sank down on his knees, and defendant put his foot on his breast, and shoved him over on his back.

Otis Rusk testified that he was standing at the blacksmith shop, and saw defendant holding Mr. Foreman by the arm, and leading him along; that he heard Foreman tell defendant that he did not have to take him home, or that he did not have to take him to Jay. Then defendant hit Mr. Foreman with his right hand, near the cheek or side of the face. Mr. Foreman staggered a little, and defendant stepped a little back, and said, "I will shoot you." Mr. Foreman said, "Well, shoot," and defendant shot him twice. When he fired the first shot, defendant said, "Now, damn you, go home," and shot again. Mr. Foreman's hands were up on a level with his face. That he was there when they searched his body, and they found a short pencil, some tobacco, and maybe a match in his pockets.

Tom Carrack testified that he was standing at the blacksmith shop, and saw defendant turn Foreman's arm loose, and then hit him with his fist. Then defendant stepped back, pulled a pistol from his hip pocket, and shot Foreman twice. That, when defendant pulled his gun, he heard Foreman tell him to shoot. Foreman started to fall forwards, and defendant pushed him backwards with his foot.

Cal Lamont testified that he had been acquainted

with defendant and deceased for about 25 years; first saw them that day in front of Carroll's store. Defendant was searching Foreman by slapping the side and hip pockets of his overalls. Then defendant took Foreman by the arm, and came across the street to his store porch. Defendant asked him if he could take Foreman over to Jay. He told him he could not on account of sickness. Foreman spoke up, and said, "You don't have to take me, I can go." Defendant said, "You will have to go there next week." Foreman said, "All right." Defendant took him by the arm, and they started west. After going 15 or 20 steps, defendant hit Foreman on the side of the face or neck. Foreman wheeled around, and defendant stepped back, pulled his gun out of his right front pocket, and said "Go home." Foreman said, "Shoot," and defendant fired two shots. That, when defendant hit Foreman with his fist, Foreman put his hands up, and they were up when the second shot was fired.

Several other eyewitnesses testified, and their testimony is substantially the same, and to the effect that defendant searched the person of deceased when they came out of Carroll's store.

For the defense the father of defendant testified that he had known Switch Foreman about 30 years, and met him that afternoon in Carroll's store, and Foreman was drunk. That about an hour later he saw his son holding Mr. Foreman by the arm and going towards Lamont's store. That he talked with Mr. Lamont. In about five minutes he started from there west, holding Foreman by the shoulder, and all at once Mr. Foreman jerked loose, and they stood facing each other. Mr. Foreman threw his right hand back, and his son jerked his pistol out and shot him twice. That he was the first man to reach Mr. Foreman. Then a big crowd gathered, includ-

ing Mrs. Foreman and two of her daughters. Then the body was searched.

Les Carroll testified that Switch Foreman came into his store drunk, and was there about two hours, when defendant came into the store, and asked him how long Foreman had been there. He told him quite a bit, and defendant said, "Why don't you make him go home?" and walked back to where Foreman was lying on a bench, and told him to get up from there. Foreman jumped up. Defendant said, "Consider yourself under arrest," and said, "If I had any way to take you to Jay, I would take you." Foreman said, "You would play hell taking me anywhere." Defendant took him by the arm, and they went outside and across the street to Lamont's store. In a few minutes they started down the street. The first thing he noticed was their hands go up, and Foreman hit defendant across the breast with his left hand. Defendant fired two shots, then hollered out, "You men come down here and see what I have done;" then stooped down and straightened Foreman's leg out from under him. Defendant came back, and told him to 'phone Ben Smith, the sheriff. That defendant's wife is his sister.

Ples Mann, defendant, testified:

"I live near Oaks, had been acquainted with Switch Foreman about 25 years. I was deputy sheriff. I went into Carroll's store. He was lying on a bench. I slapped him on the hip, and told him to get up from there and go home. He said, 'To hell with you.' I said. 'Well. I will just arrest you and take you to Jay.' He said, 'By God, you can't take me any place,' and I pulled him up, and pushed him out of the store. I tried to search him, and felt on his hip pockets, but he just kept pushing me away. I led him across the street to Lamont's store, and asked Lamont if I could get him to take me and this fellow to Jay. Lamont said, 'No,' he could not go. Foreman said, 'I don't have to go to Jay; if I do, I will go by myself.' I said, 'I can't take you this evening, but I will go and swear

out a warrant for you and come back and get you. You will have to go home.' I caught him by the arm, and I led him off down the street. He said, 'What are you taking me home for.' I said, 'Because you are drunk.' He said, 'You are a God damn liar,' and he hit me in the stomach with his elbow. I pushed him back and hit him. He wheeled around and threw his hand in his pocket. He saw I had my gun out, and said, 'Shoot, God damn you.' I shot twice because I thought he was aiming to hurt me, you know, shoot me. I knew that he was a dangerous man, and I knew if he had a gun in that pocket he would shoot. When I fired the second shot he had his hand up. He let it fall, and kind of wheeled around, and fell right on his back with his left leg under him, I reached down and pulled it out. My father and Bill Robbins came up. I said, 'Bill, you see what I had to do.' About the 1st of April Lee Mann and Ira Fain each told me, 'You better watch Switch Foreman, he has threatened your life'."

It is undoubtedly the law of justifiable self-defense that, if defendant had at the time reasonable grounds to believe, and in good faith believed, that deceased intended to take his life, or do him great bodily harm, he was not obliged to retreat, nor to consider whether he could safely retreat, but was entitled to stand his ground, and meet any attack made upon him with a deadly weapon, in such way and with such force as, under all the circumstances, he, at the moment, honestly believed, and had reasonable grounds to believe, was necessary to save his own life or to protect himself from great bodily injury.

In Roddie v State, 19 Okla. Cr. 63, 198 P. 342, we said:

"Acts which a defendant may do and justify under a plea of self-defense depend primarily upon his own conduct, and secondarily upon the conduct of the deceased. However, there is no fixed rule applicable to every case. If a man, while in the lawful pursuit of his business, without fault on his part, is placed under circumstances sufficient to excite the fears of a reasonable person that an-

other designs to commit a felony or some great bodily injury upon him, and to afford grounds for reasonable belief that there is imminent danger of an accomplishment of this design, he may, acting under these fears alone, slay his assailant, and be justified by the appearances, and, as where the attack is sudden and the danger imminent, he may increase his peril by retreating, so situated he may stand his ground and slay his assailant.

"On the other hand, if one who has taken the life of an assailant was himself in the wrong, he cannot plead self-defense, but the wrong which will preclude him from making that defense must relate to the assault in resistance of which the assailant was killed."

It is the well-settled doctrine in this state that the right to take another's life in self-defense is not to be tested by the honesty or good faith of defendant's belief in the necessity of the killing, but by the fact whether he had reasonable grounds for such belief.

Our examination of the evidence leaves no doubt in our minds as to defendant's guilt. He, a deputy sheriff, shot an unarmed and defenseless man without excuse or justification. According to his own statement on the witness stand, he is guilty of manslaughter in the first degree. It follows that the verdict was as favorable to defendant as the law and the testimony warranted.

Two or three exceptions were taken to rulings of the court during the progress of the trial on the admission and rejection of evidence which we have not overlooked, but do not consider necessary to discuss.

No objections were made or exceptions taken to the instructions given by the court, and, taken as a whole, they were more favorable to defendant than he had any right to expect.

We have to say in conclusion that there was no error which could have been prejudicial to defendant.

The judgment of the lower court is accordingly affirmed.

BESSEY, P. J., and EDWARDS, J., concur.